## WINGERT v. FIRST NAT. BANK OF HAGERSTOWN, MD., et al.

### (Circuit Court of Appeals, Fourth Circuit. December 16, 1909.)

### No. 937.

1. BANKS AND BANKING (§ 259*)—NATIONAL BANKS—POWERS—IMPROVEMENT OF REAL ESTATE.

Where a national bank in flourishing condition had been for many years the rightful owner of a lot improved by its bank building, it had power to alter and enlarge the improvement thereon so as to furnish better accommodation for the bank's business, and at the same time provide offices which could be rented to tenants.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 980; Dec. Dig. § 259.*]

2. BANKS AND BANKING (§ 280*)—MANAGEMENT OF CORPORATE BUSINESS—DIRECTORS' MEETING—ACTIONS—ANSWER—APPROVAL BY DIRECTORS.

Where, at a regularly called meeting of the directors of a national bank, it was voted to tear down the bank building and erect a new building in conformity with certain plans on the bank site, at which meeting W. was present and recorded the only dissenting vote and had then made formal written protest, and plaintiff, his brother, had filed a stockholder's bill making W. one of the defendants to restrain the contemplated action of the bank, it was not material that the bank's answer to the suit was not formally ratified at a regularly called meeting of the directors.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 280.*]

Appeal from the Circuit Court of the United States for the District of Maryland, at Baltimore.

Suit by Lewis P. Wingert against the First National Bank of Hagerstown, Md., and others. From a decree denying an injunction to restrain a national bank from improving its bank property, plaintiff appeals. Affirmed.

Henry F. Wingert (Miller Wingert, on the brief), for appellant.

Charles A. Little and George R. Gaither, for appellees.

Before GOFF, Circuit Judge, and BRAWLEY and CONNOR, District Judges.

PER CURIAM. The decree complained of is without error. The opinion of the court below, on which said decree is founded, in our judgment properly disposes of the questions of law involved in this case, and is adopted as the conclusion reached by this court on the assignments of error found in the record.

Said opinion reads as follows:

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"MORRIS, District Judge. This is a bill for an injunction filed by Lewis P. Wingert on his own behalf (and on behalf of such other stockholders of the First National Bank of Hagerstown, Md., as should elect to become parties complainant) against the bank and against its directors.

"The bill alleges: That the First National Bank of Hagerstown, Md., is a national bank organized and incorporated under the act of Congress authorizing the organization of national banks. That it has a capital stock of $100,-000 divided into 10,000 shares of $10 each. That the complainant, Lewis P. Wingert, is the owner of 151 shares of the par value of $1,510. That the bank owns a lot of ground in Hagerstown which is improved by a banking house in . which it is now doing business, and which the bill alleges is sufficient for the bank's uses and of which the second and third floors are rented out to tenants. That the directors of said bank are about to tear down the present building and erect in its place at a cost of $60,000 a six-story building of which the first story is designed for the use of the bank and the remaining five stories are designed to be rented out for offices and places of business. That the contemplated action of said national banking corporation is ultra vires and prohibited by the provisions of the national banking act. That a diversion of so large a portion of the funds of the bank from its legitimate business is not consonant with proper banking methods, and that the complainant has addressed to the president and directors a formal written protest calling upon them to desist from said illegal action. That, notwithstanding said protest, the said directors are about to cause the present banking house to be torn down and intend thereafter to erect on said lot the six-story bank and office building aforesaid. The bill then charges, that, by the restrictions of the act of Congress governing national banks, the corporation can lawfully hold only such real estate 'as shall be necessary for its immediate accommodation in the transaction of its business,' and that the action aforesaid of said directors is not only unwise as a business proposition and a diversion of the bank's fund from legitimate uses, but is contrary to the act of Congress; that the bank cannot lawfully enter upon a real estate business such as the construction of a large and expensive office building to be rented out for general purposes. The bill prays an injunction restraining the bank from erecting on the site of the present bank building or any other lot belonging to or acquired by the bank a six-story building and from tearing down the present bank building for the purpose of erecting in its stead such six-story office building, and from changing the present bank building more than shall be necessary for its immediate accommodation in the transaction of its business.

"The bank and all of the directors (except William Wingert) answered the bill, alleging: That the lot owned by the bank is in the center of the business part of Hagerstown surrounded by the principal commercial and public buildings of the city, and is in a location peculiarly adapted for an office building such as is contemplated. That the present building has been used for about 30 years, and during that time but little money has been spent on it in repairs or improvements, and that it is in such condition that considerable money must be spent on it to make it suitable and convenient for properly conducting the business of the bank therein. That the bank has over and above its capital a surplus of $100,000 and about $32,000 of undivided earnings and is in a most flourishing condition doing a large business and having a very large amount of deposits. That the lot of ground alone is worth from $35,000 to $40,000, although carried at a valuation of only $10,000. That the proposed expenditure will be taken out of the undivided profits, and will not diminish the surplus of the bank and will be a safe and productive investment of its funds. That there is a demand in Hagerstown for such an office building, and a number of persons have already applied for offices in it, and that the rents to be obtained will reduce the cost of the bank's own quarters to a very small sum. That at a special meeting of the directors at which all the respondents (except Heyser, the bank's cashier) and including William Wingert were present all the directors voted in favor of the proposed improvement except William Wingert, a brother of the complainant, who alone opposed the contemplated improvements. That the said proposed action was also sub-

mitted to the individual stockholders of whom about 75 per cent. indorsed the action of the directors.

"It is to be noticed that this is not the case of a national bank about to purchase real estate for the purpose of erecting thereon a six-story office building as a business enterprise. In the present case the lot of ground has belonged to the bank since its organization, having previously belonged to the Hagerstown Savings Bank, to all of whose assets the bank succeeded. It is therefore simply a question whether or not the bank which is and has been for many years the rightful owner of a lot of ground improved by its bank building can alter and enlarge the improvement on it so as to furnish better accommodation for the business of the bank and at the same time provide offices which can be rented to tenants. There is no charge in the bill and no statement in the testimony challenging the good faith of the directors. All except William Wingert appear in the honest exercise of their best judgment to be of opinion that the proposed expenditure of the bank's funds is wise and beneficial and for the best interest of the bank.

"Who, then, is to determine the wisdom or the unwisdom of such an expenditure? Is the minority stockholder or the single director who out of 12 directors opposes it, or the judge of the court, or is it the board of directors to whom the management of the affairs of the bank has been committed by the stockholders who own it? There can be but one answer to this question. In an extreme case of a wasteful, unjustifiable expenditure of the funds of a corporation by its directors so great as not to be consistent with good faith, the court will interfere, but this case is altogether wanting in any such fact. The amount that may be reasonably expended on a bank building is a question into which enter a great many considerations properly to be determined by the men selected to manage the bank's affairs. In this case there appears nothing which would justify the court in condemning the action of the directors on the ground of its manifest unwisdom.

"The other ground urged by the complainant is that the proposed action is violative of the restriction which permits a national bank to hold only such real estate as shall be necessary for its immediate accommodation in the transaction of its business, and that, therefore, the erection of a building which will contain offices not necessary for the business of the bank is not permitted by the law, although that method of improving the lot may be the most beneficial use that can be made of it. It is matter of common knowledge that the actual practice of national banks is to the contrary. Where ground is valuable, it may probably be truly said that the majority of national bank buildings are built with accommodations in excess of the needs of the bank for the purpose of lessening the bank's expense by renting out the unused portion. If that were not allowable, many smaller banks in cities would be driven to become tenants as the great cost of the lot would be prohibitive of using it exclusively for the banking accommodation of a single bank. As indicative of the interpretation of the law commonly received and acted upon, reference may be made to the reply of the Comptroller of the Currency to the inquiry by the bank in this case asking whether the law forbids the bank constructing such a building as was contemplated.

"The reply was as follows: 'Your letter of the 9th instant received, stating that the directors contemplate making improvements in the bank building and inquiring if there is anything in the national banking laws prohibiting the construction of a building which will contain floors for offices to be rented out by the bank as well as the banking room. Your attention is called to the case of Brown v. Schleier, 118 Fed. 981 [55 C. C. A. 475], in which the court held that: "If the land which a national bank purchases or leases for the accommodation of its business is very valuable it may exercise the same rights that belong to other landowners of improving it in a way that will yield the largest income, lessen its own rent, and render that part of its funds which are invested in realty most productive."' This seems to be the common sense interpretation of the act of Congress and is the one which prevails.

"The testimony tends to support the contention of the defendants that the bank's lot of ground has increased greatly in value with the increasing business of the city and is capable of a more profitable use than with its present improvements; and that the bank has a large surplus which can be more

profitably employed by the contemplated use of it than it is at present. It is to be noticed that no one of the stockholders has joined with Lewis P. Wingert in this suit and become a party complainant, although it seems probable that the Wingert family who together own about one-tenth of the total capital stock do side with the complainant in this controversy.

"There are some technical points which the complainant has pressed in argument. First, that the filing of the answer of the bank was not authorized at a properly called meeting of the directors. It appears that at a regularly called meeting held April 13, 1909, it was voted to tear down the present building and erect on the site a new six-story building in conformity with the plans theretofore adopted. At that meeting all the directors voted in the affirmative except William Wingert, who voted in the negative. Afterwards, when this bill was filed by Lewis P. Wingert against the bank and all its directors, the answer of the bank and of all the directors, except William Wingert, was prepared by counsel, and a meeting of the directors was called at which the answer of the bank was read and approved, and the answer of the individual defendant directors, except William Wingert, was signed by each one of them.

"The objection urged is that William Wingert, one of the directors, was not notified of this meeting, and that, therefore, the answer filed by the bank ought not to be received because not adopted by a legally called meeting of the directors. The matter of the proposed improvement had been fully canvassed at previous directors' meetings and had been determined upon at a meeting at which the director, William Wingert, was present, and at which his was the only dissenting vote and the bank had proceeded with the proposed work. He had then made formal written protest and his brother had filed this bill of complaint making him one of the defendants. The filing of the bank's answer was a matter of course. The wording of the answer was in this case mere matter of detail. It was signed by the president of the bank and sworn to by him. It was not a matter of such independent importance that it could not be filed until approved by a regularly called meeting of the directors.

"There are quite a number of exceptions to the admissibility of testimony mostly objections to questions and answers on cross-examination. Although some of the testimony is objectionable as immaterial, in the view I have taken of the case, it is not important whether the objections are sustained or not. The result would be the same either way, and I shall not prolong this opinion by considering them.

"I will sign a decree denying the injunction and dismissing the bill."

Affirmed.