JOHN S. PHIPPS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

AMY GUEST, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HENRY C. PHIPPS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 26038–26040, 33203–33205.   Promulgated May 29, 1930.

*Bernard Knollenberg, Esq.*, for the petitioners.
*J. E. Marshall, Esq.*, and *C. A. Ray, Esq.*, for the respondent.

OPINION.

Love: Respondent contends that petitioners were each members of a *partnership* entitled " H. W. Robbins Co.," created to handle this transaction. We are not of that opinion. There is no evidence whatever of the existence of such a partnership, except the so-called partnership returns for 1922, 1923, and 1924, and the individual returns of petitioners. It does not appear that such an information return was filed for 1925, although at least one lot from this tract was sold in that year. On the contrary, we think that there is persuasive evidence that no such partnership existed. It has not been shown that business of any kind was transacted as a partnership. H. W. Robbins was, in 1916, the secretary of John S. Phipps, one of the petitioners, and the record title was taken in Robbins' name as a matter of convenience and to cloak the real owners because they did not wish their names known in connection with the purchase of the property. They were known to be wealthy and they had in contemplation the purchase of additional property, and if it were known that they were

in the market the price might be raised and their real estate taxes might be affected if the title to the property were recorded in their names. When a contract for sale of a lot was entered into, a " down payment " was made, usually by check to Robbins, and the papers sent to him in New York for execution, by the broker who made the sale. He deposited such checks to the credit of the account with this property on the books of the Bessemer Investment Co., which had loaned money to the individuals for the purchase of the property. No partnership articles were written up. There were no letterheads of the " H. W. Robbins Co."; no listings in the telephone directories. In correspondence connected with this transaction the paper bore only the address " 787 Fifth Avenue, New York," and nothing else, and the communications were signed " H. W. Robbins." Said the witness (Robbins) :

It was not a separate business in any sense of the word. It was part of the Phipps investments. We never considered it as a separate business.

In the light of these facts, we hold this transaction to have been a joint venture in which each of these petitioners had an undivided one-third interest; the legal title to the property being in H. W. Robbins, their representative, but the equitable title to the estate resting in them as tenants in common.

The contentions of the petitioners are that transactions in real estate did not constitute their trade or business (although they offer no evidence to show that they had any other trade or business) ; that this property did not form their stock in trade; that it was a capital asset held for more than two years, and that the gain thereon was a capital gain taxable under the provisions of section 206 of the Revenue Act of 1921, and section 208 of the Revenue Act of 1924.

The pertinent provisions of section 206 of the 1921 Act are :

(a) That for the purpose of this title :
(1) The term " capital gain " means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921;
  *   *   *   *   *   *   *
(6) The term " capital assets " as used in this section means property acquired and held by the taxpayer for profit or investment for more than two years (whether or not connected with his trade or business), but does not include property held for the personal use or consumption of the taxpayer or his family, or stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year.

Section 208 of the Act of 1924 is similar but not identical. It provides that :

(a) For the purposes of this title—
(1) The term " capital gain " means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921;
  *   *   *   *   *   *   *

(8) The term "capital assets" means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business.

The provisions of section 208 (a) (1) and (8) of the Revenue Act of 1926, which are controlling for the year 1925, are substantially the same as the above quoted provisions of the 1924 Act.

With reference to the 1924 and 1925 transactions, petitioners claim that the purchase and sale of Florida town lots in question was an isolated transaction and not one entered into in connection with their trade or business in such a way as to bring it within the provisions of the last phrase of section 208 (a) (8) of the 1924 Act.

We believe that the evidence clearly shows, and we so hold, that petitioners were dealers as well as investors in real estate.

Robbins, the sole witness, testified that John S. Phipps, Henry C. Phipps, and other members of the Phipps family were the principal people interested in the Henry Phipps Estates, a corporation dealing in real estate, and that the Bessemer Investment Co., a family banking corporation, furnished the money for the purchase of this property. He further testified that "they [the Phipps] were always investing in real estate, both individually and collectively."

The land, as acreage, was purchased early in 1916, and was immediately cut up into lots and improved and offered for sale by lot sale. Some lots were sold as early as August, 1916, and sales continued throughout 1916 and subsequent years. All the lots were sold by October, 1929. The fact that the record title to the land was in the name of H. W. Robbins does not alter the situation. The evidence conclusively shows that it belonged to the petitioners, and was handled through Robbins simply for convenience. The fact that some of the lots were held more than two years does not alter the situation. The evidence clearly shows that the property was purchased, and at all times held primarily for sale in the course of their business.

The situation is different for the years 1922 and 1923. For those years, the 1921 Act was in effect. That act does not contain the last phrase of section 208 (a) (8) of the 1924 Act. Therefore, we must consider the last phrase of section 206 (a) (6) of the 1921 Act. Whether or not real estate, under any circumstances, could properly be classed as "stock in trade," the syntax of the phrase in which that term is used in the statute now under consideration is such that it is modified by the clause "which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year."

Real estate may not be included in an inventory. *Atlantic Coast Realty Co.*, 11 B. T. A. 416; *Albert F. Keeney*, 17 B. T. A. 560.

The property was purchased in 1916, and hence the lots sold in 1922 and 1923 had been held for more than two years, and by reason of the fact that real estate, however held, is not excluded by the excluding clause of the statute, it must be deemed to be included within the provisions of section 206 (b) of the Revenue Act of 1921. *Albert F. Keeney, supra.*

*Judgment will be entered under Rule 50.*