*Decision will be entered under Rule 50.*

WINTER HOLDING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63144. Promulgated January 31, 1935.

*R. M. O'Hara, Esq.*, for the petitioner.
*F. M. Thompson, Jr., Esq.*, for the respondent.

OPINION.

VAN FOSSAN: The respondent determined that the petitioner was a holding or investment company and not a dealer in real estate. Accordingly, he held that no loss was deductible on a property known as 32 Union Square when exchanged for other property, under section 112 (e) of the Revenue Act of 1928.[1] He also dis-

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) *General rule.*—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) *Exchanges solely in kind.*—

(1) PROPERTY HELD FOR PRODUCTIVE USE OR INVESTMENT.—No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.

* * * * * * *

(e) *Loss from exchanges not solely in kind.*—If an exchange would be within the provisions of subsection (b)(1) to (5), inclusive, of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain or loss, but also of other property or money, then no loss from the exchange shall be recognized.

allowed as an expense the commission paid on the sale of 1035 Fifth Avenue and held that it should be used to reduce the amount of profit in computing the percentage of profit on the installment sale. As a consequence the respondent determined a deficiency of $10,245.98 for the taxable year ended November 30, 1929. The petitioner alleges error in both respects.

The determination of the question here involved turns primarily on whether the property was held for productive use or investment.

Benjamin Winter, president and organizer of petitioner, was personally very active in the real estate field. He was also president and in control of several other similar companies, all of which were used in various ways in connection with his real estate transactions. Selling agencies dealing with any properties held by Winter or any of his companies never distinguished among the several companies.

Petitioner is a corporation, formed in 1920 for the following purposes:

The erection of all kinds of buildings, the purchase and sale of real estate, the renting and leasing of all kinds of real estate, to act as real estate brokers and agents, that is, to purchase and sell real estate for others and to have charge of the management and control of all kinds of real estate in the city of New York.

The petitioner never acted as a broker, never had a license as such, and never bought or sold property for others.

In 1920 the petitioner acquired title to an office building at 32 Union Square, New York. The property was immediately listed for sale with a number of brokers. It was exchanged on October 15, 1929, for another property and the payment by petitioner of $275,000, consisting of $50,000 in cash and $225,000 in the form of a purchase money mortgage. In 1920 the petitioner also acquired 182 West 58th Street and immediately listed it for sale. A sale was made in 1930. No other properties were acquired from 1920 until 1928, during which year petitioner bought three other properties, making sale of one of such properties in the same year. In the taxable year it acquired two additional properties and disposed of two properties, one disposed of was the Union Square property acquired in 1920, referred to above, and disposed of by exchange, and the other, 1035 Fifth Avenue, acquired in 1928, disposed of by sale. No other pertinent facts as to the Fifth Avenue property were produced.

The Union Square property was operated profitably until 1929 when, due to a change in the trend of business location, it became unprofitable. During all the time it was held by petitioner, the petitioner endeavored to keep the office space rented. The same policy was followed with all properties, whether office or apartment buildings. In this connection it incurred large management and operating expenses. The petitioner's tax return for 1929 showed receipts from interest $15,411.28, rents $647,032.84, profit on sale of

real estate $144,885.69, and other income $16,313.22. Deductions were claimed as follows: Interest, $202,025.29; taxes, $112,089.54; bad debts, $4,650.04; depreciation, $39,010.79; salaries and wages, $113,623.54; expenses, $138,125.17. The petitioner made no claim for loss on exchange of the Union Square property in its return.

In determining whether a corporation is engaged in a particular business, though consideration should be given to the purposes for which the corporation was organized, it is more important to determine what is actually done in pursuance of or departure from its announced purposes. In this inquiry the regularity or persistence with which the asserted business purpose is pursued is important. If the transactions are infrequent, casual or isolated, the consequence of occasional convenience rather than the result of persistent endeavor, the corporation can scarcely be said to be engaged in the business in question. In other words, the test is pragmatic rather than theoretical. In this connection attention is attracted to the fact that from 1920 to 1928 the company was inactive in the matter of purchases and sales and to the further fact that in 1929 only two properties were disposed of.

The petitioning company was but one of several corporations controlled by Winter and used as occasion arose in connection with his real estate business. From the fact that Winter was in the real estate business, or was a dealer in real estate, it does not necessarily follow that all of his companies were likewise so engaged. Some may have been used to hold title, others to operate as income producers. Nor does it follow that since petitioner's president was always ready to sell property held by it at a reasonable profit, and declared resale to be the controlling consideration, the corporation was engaged as a dealer in real estate.

In a case such as this, we must look to all the evidence, of which the declarations of interested parties are but a part. The day-to-day operations, the business actually consummated, the amount and character of income, the number and relative importance, in the entire picture, of particular transactions—all these and other factors—are to be weighed. The Union Square property was held for nine years, during which it was profitable. In 1929 it became unprofitable and was disposed of. It is difficult to escape the conclusion that the primary reason for the sale was the desire to get rid of a property that had ceased to be profitable, a reason which arose only in 1929. Such a disposition does not, of itself, establish that the property was held primarily for sale.

After a careful weighing of all factors deemed pertinent, we are of the opinion the petitioner has not proved respondent to be in error in his conclusion that petitioner was a holding or investment company and not a dealer in real estate. The evidence convinces

us that the Union Square property was held for investment and that on disposition in 1929 it came squarely within the provisions of section 112 (b) of the Revenue Act of 1928, forbidding the recognition of loss. See *Loughborough Development Corporation*, 29 B. T. A. 95, and cases there cited and *George E. Hamilton*, 30 B. T. A. 160.

At the hearing it was agreed by counsel that if the petitioner be held to be a dealer in real estate there is no deficiency; if petitioner be held not to be a dealer in real estate, the deficiency is correct as determined. As a consequence of this agreement no details as to the sale of the Fifth Avenue property were presented. The conclusion above reached disposes of this issue also.

Reviewed by the Board.

*Decision will be entered for the respondent.*