## BURKHARD INV. CO. v. UNITED STATES.

No. 7533–M.

District Court, S. D. California, Central Division.

Jan. 31, 1938.

Raymond R. Hails and John A. Jorgenson, both of Los Angeles, Cal., for plaintiff.

Alva C. Baird, Asst. U. S. Atty., and E. H. Mitchell, Asst. U. S. Atty., both of Los Angeles, Cal.

McCORMICK, District Judge.

Plaintiff corporation sues to recover $6,443.95, which it claims to have been an overpayment to the government as its income taxes for the calendar year 1930. Jurisdiction is unquestioned. Return and payment have been regularly made; specific claim for refund has been duly presented, and rejection of such claim has been properly established. It is unnecessary to discuss any matters of accounting, as such have been stipulated in this action.

Generally speaking, the action is based upon a claim that the taxpayer, being engaged in the real estate business, in making exchanges of parcels of its real property for other lands during the year sustained losses which it was and is entitled to have recognized in its income tax obligations for that year.

The contention is made under section 112(a) and (b) (1) of the Revenue Act of 1928, 26 U.S.C.A. § 112(a), (b) (1), and Treasury Regulation 74, Article 572 (a), promulgated thereunder, which are as follows:

"Revenue Act of 1928—

"Sec. 112(a) and (b) (1):

" '(a) General Rule. Upon the sale or exchange of property the entire amount of the gain or loss determined under section 111, shall be recognized, except as hereinafter provided in this section.

" '(b) Exchanges solely in kind—

" '(1) Property held for productive use or investment. No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.' [26 U.S.C.A. § 112(a), (b) (1) ].

"Treasury Regulations 74—

"Article 572(a) : Exchanges of property.—In the following cases no gain or loss is recognized:

"(a) If property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment. The words "like kind" have reference to the nature or character of the property and not its grade or quality. Therefore, under this paragraph no gain or loss is realized by one other than a dealer from the exchange of real estate for other real estate. One kind or class of property may not, under this paragraph, be exchanged for property of a different kind or class, as real estate for personal property. However, a leasehold of a fee with 30 years or more to run will be considered property of like kind to real estate. The fact that any real estate involved in an exchange is improved or unimproved makes no difference, for such fact relates only to the grade or quality of the property and not to its kind or class. Unproductive real estate held by one other than a dealer for future use or future realization of the increment in value is held for investment and not primarily for sale."

Under this statute and regulation, before plaintiff is entitled to a refund by reason of an accounting loss occasioned by an exchange of real property, it is necessary for it to establish (1) that in the concrete transactions under consideration it functioned in the capacity of a real estate dealer; and (2) that the real properties exchanged were held primarily for sale and not for productive use in trade or business or for investment.

We think that upon consideration of all of the evidence in the record before us the plaintiff has not sustained either of these propositions.

The Burkhard Investment Company is a close, family corporation. It was formed in 1912 by Joseph Burkhard, who at

that time contemplated retiring from the active management of large real property interests in California that he had acquired over a period of many years. The articles of incorporation did not limit the business of the company to real estate transactions. Although it has never engaged in any activity that did not pertain to real estate, the company has never been licensed to engage in the real estate business in any way. It has dealt in its own property exclusively, and has had no income from commissions or brokerage on sales. It has always, when requested by real estate agents or other interested parties, given a listing or selling price of any of its property. The price has gradually changed as business conditions improved and as values increased. It seldom places sale signs on any of its property.

The business policy pursued by the company since its incorporation has been to hold its real estate for an advantageous sale and then to sell, either outright or on installments, and in the interim to rent and lease, and in one instance to improve and subdivide a ranch property which it also operated. The company throughout has been selling off its property and acquiring new parcels and selling or exchanging them as an advantageous situation presented itself. It had when organized in 1912 nineteen parcels of real property of a book value of $2,728,837.70, and at the close of the year 1930 it continued to own, control, and manage eleven of these parcels, which then had a book value of $3,818,627.86. The company's transactions for the eight years ending December 31, 1930, amounted to more than five and one-half million dollars.

The gross income from all company activities from 1923 to and including 1930 was $3,329,117.66, and all but less than 2 per cent. of this aggregate amount came from interest, rents, and profits on the sale of real estate. It appears, however, that in the year 1930 nearly 3.50 per cent. of the gross income of the company came from other sources.

In its income tax return for the year 1930 the main income-producing business of the plaintiff is stated by its officers to be "renting and selling own real estate and other assets."

During the taxable year 1930, the Burkhard Investment Company, according to its income tax return, realized profits of $185,182.99 from sales of its real estate. The total income from all sources was $490,683.56, more than $250,000 having been received from rents. Of the 1930 reported profits, $159,182.99 was income from installment sales actually made in 1929 from one property known as "Banning Ranch" that was purchased in 1926 for $67,240.25. These installment sales produced over 74½ per cent. on the money invested in less than four years. This large gain indicates that the land was held not primarily for sale, but rather for productive use and as an investment. The same situation seems to have been the motivating reason for retention of parcels of Los Angeles city property that were acquired from Joseph Burkhard at the incorporation of the company in 1912. These properties, formerly residential sites, are now situated in a metropolitan area of greatest commercial activity in downtown Los Angeles, and have had business buildings erected by lessees of the company under long-term ground leases which have produced substantial rentals that are based upon a return of certain percentages of an appraised value of the property.

It is more reasonable to attribute the holding of such properties for many years to a prospect of establishing a steadily increasing income for the stockholders of the company, with an attendant retention and increase of capital, then that such properties are held primarily for sale. The element and hope of an advantageous sale enters into the situation, but we think it is secondary to the investment feature that is the dominant factor in holding the property.

The most that can be said when the multifarious real estate transactions of the company from the time of its organization to the present are considered is that it has had at all times a dual status, primarily that of a convenient entity for holding intact, conserving, managing, and improving a family estate, and incidentally, because the major part of the estate is real property, acting as a dealer therein to discharge its primary purpose, as an occasion for such action was deemed advisable. Compare Winter Holding Corporation v. Commissioner, 31 B.T.A. 1185.

These two functions have been performed contemporaneously, and neither can be said to be the sole business of the company. A taxpayer may be both a dealer and an investor in real estate at the same

time. Phipps v. Commissioner, 19 B.T.A. 1293.

But regardless of the classification of the general business of the Burkhard Investment Company, it is clear from the evidence and circumstances in proof that the particular exchanges of its real property in 1930 which resulted in the loss which plaintiff now contends should be recognized under the aforesaid applicable provisions of the Revenue Act of 1928, were consummated for productive use or investment and not primarily for sale within the meaning of the Revenue Act of 1928 and Treasury Regulation 74.

About the year 1918, Joseph Burkhard acquired about eight acres in Altadena, Cal., as a homesite. This place was known as "Empire Ranch." A residence was built upon it, and Mr. and Mrs. Burkhard lived there until Mr. Burkhard's death in 1928. By his will Joseph Burkhard devised a life estate in this homesite to his widow, who was his second wife, and the remainder to his descendants. All of the latter had their own residences elsewhere, and the ranch place was therefore of no special interest to them. The widow herself preferred a smaller place, and a deal was consummated wherein she transferred her life interest in "Empire Ranch" to the company, which in turn bought and conveyed to her a smaller home place in Beverly Hills, Cal. Some additional cash was paid in equalizing values in the exchange. The entire "Empire Ranch" home place was, in 1930, exchanged' for business property known as the "Santa Monica" property. This contained a brick building divided into six stores, which at the time of the exchange were all rented, and the property was producing an income on the investment made by the exchange. Shortly after the acquisition of this property, the rentals fell off on account of the establishment of a safety zone in front of the stores which diverted trade from them. Efforts were made by the company to remove the trade barriers, but without avail, and the officers of the corporation, after unsuccessfully trying to sell, effected an exchange of this property for two corners on Wilshire boulevard which were "in the trend of growth," and which offered to the company more rapid improvement than the Santa Monica property. One of the corners was improved with a small gasoline station; the other was vacant.

Undoubtedly the main purpose in trading the nonincome-producing and unnecessary "Empire Ranch" for the Santa Monica business place was to invest the capital outlay in property that the company could hold for its productive use. This the company did, until the main purpose of the exchange was rendered futile by irremediable traffic changes which were encountered shortly after the exchange. The company, being then gravely concerned about its investment, traded for a more promising location, primarily to safeguard its investment by holding the Wilshire property until a more propitious realty situation presented itself.

We conclude by holding that the transactions of the corporate taxpayer under consideration preclude any right to refund under the Revenue Act of 1928 and Treasury Regulations 74 promulgated under that act of Congress.

Findings of fact, conclusions of law and judgment, with costs, accordingly ordered for defendant.