## BURKHARD INV. CO. v. UNITED STATES.

### No. 8879.

Circuit Court of Appeals, Ninth Circuit.

Dec. 14, 1938.

Raymond R. Hails and John A. Jorgenson, both of Los Angeles, Cal., for appellant.

James W. Morris, Asst. Atty. Gen., Sewall Key, Norman D. Keller, James P. Garland, and L. W. Post, Sp. Assts. to Atty. Gen., and Ben Harrison, U. S. Atty., E. H. Mitchell, Asst. U. S. Atty., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, all of Los Angeles, Cal., for appellee.

Before WILBUR and GARRECHT, Circuit Judges, and ST. SURE, District Judge.

GARRECHT, Circuit Judge.

This appeal involves the application of Section 112(b) (1) of the Revenue Act of 1928, 45 Stat. 791, 816, 26 U.S.C.A. § 112 (b) (1).[1]

The appellant is a family corporation, organized in 1912 by Joseph Burkhard, father of the present officers thereof. In 1930 the appellant acquired a tract of land known as the "Empire Ranch," located in Altadena, California. The property had originally been acquired by Joseph Burkhard; part of it had been sold and the remaining part of it used as the family estate, upon which Joseph Burkhard built a large home. He died in 1928, leaving a will by the terms of which he devised a life estate to his wife with the remainder to his descendants. Thereafter, the appellant acquired the life estate in the "Empire Ranch" from the widow and the remainder from the heirs, and traded it for what is called the "Santa Monica Property." This latter piece of property was located on Santa Monica Boulevard in that city, fronting 105 feet and 60 feet in depth,. improved with a brick and frame structure divided into six stores. The stores were rented and income received, but later, because of the location of a traffic safety zone, the rentals fell off and vacancies occurred. The appellant then determined to sell or exchange this property, and an exchange was affected whereby the corporation acquired two corner parcels of property on Wilshire Boulevard in Los Angeles for the Santa Monica property and a cash consideration.

---

[1] "§ 112. *Recognition of gain or loss.*

"(a) General rule. Upon the sale or exchange of property the entire amount of the gain or loss determined under section 111, shall be recognized, except as hereinafter provided in this section.

"(b) Exchanges solely in kind—

"(1) Property held for productive use or investment. No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment."

The appellant acquired the Empire Ranch at a cost of $51,123.75; the Santa Monica property was acquired at a cost to appellant of $96,615.51, including the Empire Ranch at the value set forth immediately above. At the time of the exchange of the Santa Monica property for the two Wilshire plots, it was subject to street bonds; the Wilshire pieces were each subject to street bonds and each had a mortgage against it. Appellant figures the acquisition of the Wilshire properties as follows:

| | |
|---|---:|
| Cost of Santa Monica Property (less real estate commission) | $ 96,615.51 |
| Cash | 5,348.75 |
| Mortgage against Parcel No. 1 | 75,000.00 |
| Street bonds against Parcel No. 1 | 2,516.50 |
| Mortgage against Parcel No. 2 | 50,000.00 |
| Street bonds against Parcel No. 2 | 2,473.46 |
| Total | $231,954.22 |
| Less bonds against Santa Monica property | 3,254.67 |
| Actual cost of Wilshire properties | $228,699.55 |

The court found, as counsel had stipulated, that the fair market value of the Wilshire properties at the time of acquisition by the appellant in 1930 was $110,000, for parcel No. 1, and $65,000, for parcel No. 2, or a total of $175,000.

It appears from the findings of fact that the appellant filed its corporate income tax return for the taxable year 1930 on March 16, 1931, showing a net taxable income for 1930 in the sum of $167,254.49, with a tax upon said sum payable at the rate of 12%, amounting to $20,070.54 and that during the year 1931 the full sum of $20,070.54 was paid the collector of internal revenue in four equal installments; that in making such return the appellant took no profit or loss upon the real estate transactions but, in determining net income, deducted the real estate commissions paid, $6,250; that on or about March 14, 1933, the appellant filed a claim for refund of $8,243.95 of said tax paid; that the claim for refund was denied June 18, 1935.

Appellant's corporate income tax return for the year 1930 indicated a total income of $490,683.56, of which $250,920.99 was rents; $189,135.92 "Profit from Sale of Real Estate, Stocks, Bonds, and other Capital Assets"; $39,293.43 "Interest on Bank Deposits, Mortgages, and Corporation Bonds"; and the remainder in miscellaneous items.

On March 26, 1936, the appellant filed its complaint in the court below to recover the alleged overpayment of income taxes, alleging that it was in the business of real estate dealer and that the properties were acquired and held in its business for resale and not for productive use or investment. It was further alleged that the Wilshire properties when acquired in 1930 had a fair market value of $160,000, which, when deducted from the $228,699.55, cost to appellant, left a loss of $68,699.55, accounting for an overpayment of tax in the sum of $8,243.95.

Jury was waived by stipulation in writing, and the cause tried before the court, which rendered a written opinion and filed findings of fact and conclusions of law.

The court below decided that the appellant acquired said Wilshire properties during the year 1930 for investment purposes and held that there was no overpayment of income tax for the year 1930 and judgment of dismissal was entered.

The appellant makes two contentions: (1) "The evidence conclusively shows that the Wilshire properties were held primarily for sale", and (2) "The evidence conclusively shows that the properties involved were not exchanges for properties of like kind."

In addition to the facts above recited, it appeared from the testimony that the appellant never maintained a selling organization; that it is not licensed to engage in the real estate business in any way; that its activities are confined entirely to handling its own property; that its properties are not listed with agents unless request is made by an agent for a prospective purchaser, neither are "for sale" signs placed upon any of its property. There was also testimony that the appellant had tried to sell the Santa Monica property before the trade was made; that one parcel of the Wilshire property was vacant, while a small gasoline service station was located on the other parcel. H. J. Burkhard, president of appellant, said, "The purpose in acquiring these Wilshire properties was that we believed strongly in the future of Wilshire Boulevard and believed it was in the line of growth, and certainly was in the trend of growth, and we had become con-

vinced that the Santa Monica property would not increase nearly as rapidly as property in Wilshire Boulevard in value. We did not intend to erect any buildings on these Wilshire properties and bought them for resale." Again, he said, "Since 1922 we have never built any buildings ourselves on any property except" a few buildings on a ranch and a few cheap residences in a subdivision. J. F. Burkhard, secretary-treasurer of appellant, testified, "We have never owned a piece of property that we have not offered for sale at what we thought a reasonable price and which gave us a reasonable profit."

Testimony was introduced by the appellant relating to three specific parcels of property acquired by it at the time of its organization in 1912 and held by it through 1930 and up to the time of trial, which was to the effect that these properties had been offered for sale but that they were leased at substantial rentals. Similar testimony was given regarding two other pieces of property.

The court below observed in its opinion that the appellant "had when organized in 1912 *nineteen* parcels of real property of a book value of $2,728,837.70, and at the close of the year 1930 it continued to own, control and manage *eleven* of these parcels, which then had a book value of $3,818,627.86." (Italics supplied.)

The jury having been waived by stipulation and findings of fact and conclusions of law having been made by the court below, we are limited upon review to the question whether there is substantial evidence to sustain the findings and, if so, we must affirm. We therefore inquire whether the showing was sufficient to support the view that the acquisition of the Wilshire properties was for an "investment" or for the purpose of resale, as defined by the law here under consideration.

Webster's New International Dictionary (Merriam, 2d Ed. 1935) defines "investment" as follows: "2. The investing of money or capital in some species of property for income or profit; the sum invested or the property purchased."

It is conceded that the Santa Monica property was income producing and that appellant derived an income therefrom. In view of the definition above given and the reason stated for disposing of it, there can be no question that it was held as an investment.

The Wilshire properties, for which the Santa Monica property was traded, seem properly to fall within that same classification thus, in the language of the statute, making an exchange "solely in kind," upon which loss is not recognized. Notwithstanding appellant's argument to the contrary, a careful consideration of the evidence sustains the finding of the court that the Wilshire properties were an "investment" within the meaning of that term as used in the statute.

There are few, if any, owners of property who will not sell for a price. Even where there is no immediate intention to dispose of a certain parcel of property, it might be both unwise and unprofitable for an owner not to sell if a high enough price be offered. In this sense, all property may be held for sale but this is not inconsistent with the idea that it was purchased as an investment. See Lane Timber Co. v. Hynson, 5 Cir., 4 F.2d 666, 40 A.L.R. 1448. The purchase of a piece of property can be made as an investment, even though never improved or used. Property may be, and very often is, acquired as a means of placing capital, to be held for increase in value. So property purchased with surplus funds and held for realization of increase in value is generally regarded as an investment whether given to productive use or not.

Nor can it be held that the appellant was a *dealer* in real estate in the sense that buying and selling of such property was its business. It had retained through 1930 more than half of the property it held in 1912; it listed no property for sale by agents unless requested; it permitted no signs on its property; it conducted no active campaigns to sell its real estate; it realized substantial sums from rentals and leases in income from parcels held by it. In fact, the evidence demonstrated that it received, in 1930, more than half its total income from rentals of its leased property.

Article 572 of Treasury Regulations 74 (under the Revenue Act of 1928) reads, in part: " * * * The fact that any real estate involved in an exchange is improved or unimproved makes no difference, for such fact relates only to the grade or quality of the property and not to its kind or class. Unproductive real estate held by one other than a dealer for future use or future realization of the increment in value is held for investment and not primarily for sale."

We quote from an opinion of the Board of Tax Appeals in Loughborough Development Corp. v. Commissioner, 29 B.T.A. 95, 96, 98, 99:

"The petitioner is a Delaware corporation, organized in 1923, with its principal office and place of business in·Washington, D. C. Its charter gives it the power to operate generally in the real estate business, but it has not in its regular course of business bought and sold real estate with a view to quick profits. It handles no rents, does no commission business, no loan business and, strictly speaking, no purely speculative business in real estate. * * *

"While the record shows that the petitioner under its charter possessed the power to do any character of real estate business desired, it also shows, in our opinion, that the particular real estate here involved was not acquired and held for immediate or early sale, but was in the nature of a real estate investment to be held as such to await future growth and development of the city of Washington in or towards such property before it would be placed on the market for immediate sale and no longer held as an investment. * * *

"The fact that the petitioner operated under a charter which gave it the power to act as a dealer, broker or speculator in real estate, in our opinion, did not prevent it from acquiring and holding real estate 'for investment' and not 'primarily for sale,' although such property may have been acquired with the intention of selling or disposing of the same at some subsequent, though not early, date and would not otherwise have been acquired."

The Board of Tax Appeals held that real estate acquired "to await future growth and development of ˋthe city of Washington" was an investment. This is equally true here, where the appellant's president testified, as hereinbefore set forth, that "The purpose·in acquiring these Wilshire properties was that we believed strongly in the future of Wilshire Boulevard and believed it was in the line of growth, and certainly was in the trend of growth, * * *." See, also, Winter Holding Corp. v. Commissioner, 31 B.T.A. 1185, 1187.

There is ample evidence in the record to sustain the finding of the court below "That the plaintiff [-appellant] acquired said 'Wilshire Properties'˙ during the year 1930 for investment purposes." The appellant also failed to establish that it was a "dealer" in real estate within the intendment of Article 572 of Treasury Regulations 74.

Judgment affirmed.