The **PERTH AMBOY NATIONAL BANK,**
Plaintiff,

v.

**Irving BRODSKY, Bernard H. Kayden, Herbert J. Kayden and Henry Smith, Defendants.**

United States District Court
S. D. New York.

Aug. 6, 1962.

See also 185 F.Supp. 217, resettled 185 F.Supp. 219.

Peckerman, Fisher, Gleiberman & Ezrine, New York City, for plaintiff (David Fisher, and Fred I. Sonnenfeld, New York City, of counsel).

Goldwater & Flynn, New York City, for defendants (Monroe Goldwater, and Bernard Katz, New York City, of counsel).

COOPER, District Judge.

Plaintiff Bank moves for summary judgment pursuant to Rule 56, F.R.Civ.P., 28 U.S.C.A., contending that there exists no genuine issue of material fact requiring trial and that, on the pleadings and moving papers, judgment should be granted in its favor as a matter of law.

Upon the basis of analogous assertions, defendants cross-move for summary judgment dismissing the complaint and granting judgment in their favor.

In the underlying action, plaintiff Bank seeks a declaratory judgment setting aside and declaring void the unexpired portion of a 21-year lease which it entered into in 1954. Succinctly stated, plaintiff contends that under the applicable United States statutes governing national banks, the lease must be deemed *ultra vires* and illegal and, hence, that the bank cannot be held bound for the unexpired term of such lease.

Plaintiff is a national bank organized under the laws of the United States and conducting business at premises known as 313 State Street, a 10-story office building in Perth Amboy, New Jersey. Defendants, the owners of the premises, each hold an undivided one-fourth interest in the building.

The bank originally purchased the building in February 1938, for $500,000 and at all times occupied the main floor, basement and mezzanine in its banking business, renting the balance of the space to others.

On July 15, 1954, plaintiff bank completed a sale and leaseback transaction under which it sold the building to a nominee of Charles F. Noyes for $800,000 and simultaneously entered into an agreement which provided for the leasing back of the building at an annual net rental of $80,000 for a term of 21 years. Shortly thereafter, in April 1955, defendants purchased the building from Noyes for $1,015,000 and became assignees of the lease agreement of July 15, 1954.

Although under the terms of the agreement the bank became lessee of the entire building it continued to occupy only the same space as before in connection with its banking business. Plaintiff also acquired, under the lease, the right to sublet the remaining parts of the premises to subtenants, while at the same time, it assumed complete responsibility for maintenance and supplies, insurance and taxes in connection with the entire building.

Plaintiff alleges that the terms of the lease agreement were grossly unfair and, in effect, thereby intimates that the bank did not act in good faith at the time it entered into the sale and leaseback arrangement. (See Complaint, ¶¶9, 10, 11).

Specifically, plaintiff asserts that the net annual rental of $80,000 times 21 years, the term of the lease, constitutes an "investment in bank premises" and results in "an aggregate liability of $1,680,-000, a sum three times its capital stock."

Further, the bank alleges that the net annual cost to it for renting the premises, after it credits all rentals paid by its subtenants, and after allowing a "fair" rental value of $24,000 per annum for the space which it occupies and deducting all expenses pertaining to its operation of the building, averages $70,000 a year.[1] Thus, plaintiff asserts that even viewed in this light, the leaseback arrangement results in an "aggregate liability" for the bank over the 21-year period of approximately $1,470,000, a sum considerably in excess of the amount of its capital stock.

Plaintiff argues, in addition, that under the provisions of the lease in question the bank holds real estate for purposes other than what is actually necessary for its reasonable accommodation in the transaction of its business.

Allegedly, the value of the bank's capital stock at the time of the agreement amounted to $500,000, although this is controverted by defendants. It is undisputed, however, that the bank neither sought nor secured the approval of the Comptroller of the Currency prior to the July 1954 sale and leaseback of the building.

On the basis of these averments, plaintiff contends that the lease agreement violated §§ 29, 82 and 371d of 12 U.S.C.A. The lease, plaintiff asserts, is *ultra vires* and void; and the unexpired portion of it should be declared invalid and set aside.

---

1. At the time of filing of its complaint, plaintiff alleged that its average net annual cost amounted to a sum in excess of $55,000. See Complaint, ¶11.

The relevant statutes, in pertinent part, provide:

*12 U.S.C.A. § 29.* "A national banking association may purchase, hold, and convey real estate for the following purposes, and for no others:

First. Such as shall be necessary for its accommodation in the transaction of its business. * * *"

*12 U.S.C.A. § 82.* "No national banking association shall at any time be indebted, or in any way liable, to an amount exceeding the amount of its capital stock at such time actually paid in and remaining undiminished by losses or otherwise * * *."

*12 U.S.C.A. § 731d.* "No national bank, without the approval of the Comptroller of the Currency * * * shall (1) invest in bank premises, or in the stock, bonds, debentures, or other such obligations of any corporation holding the premises of such bank * * * if the aggregate of all such investments and loans, together with the amount of any indebtedness incurred by any such corporation which is an affiliate of the bank * * * will exceed the amount of the capital stock of such bank."

The court finds plaintiff's assertion that the bank's entry into the lease was *ultra vires* under 12 U.S.C.A. §§ 82 and 371d plainly untenable. It seems manifest that those provisions can in no sense be regarded as rendering the lease agreement involved here *ultra vires.*

Thus, in Brown v. Schleier, 118 F. 981 (8th Cir., 1902) aff'd 194 U.S. 18, 24 S.Ct. 558, 48 L.Ed. 857 (1904), the Court of Appeals incisively analyzed and squarely rejected a similar contention, stating (at p. 985 of 118 F.):

"We are furthermore of the opinion that the lease in controversy was not invalid because the gross rents payable during the term would have amounted to a sum exceeding $300,-000, which was the amount of the bank's original capital. The gross rents that were to accrue and would have accrued at intervals during the 99-year term, if the lease had not been surrendered or cancelled, do not, in our judgment, constitute an indebtedness, within the fair intent and meaning of [the limiting statute] * * *. Rent is one of those ordinary expenditures which such [national banking] associations are compelled to incur and pay; and *installments of rent that are to be earned by the occupation of the demised premises in future years, and may never in fact be earned, can hardly be esteemed an indebtedness, and certainly not an indebtedness within the fair purview of [the limiting statute], until it has accrued. * * *."* [Emphasis added]

See, also, City of Walla Walla v. Walla Walla Water Co., 172 U.S. 1, 19, 19 S.Ct. 77, 43 L.Ed. 341 (1898) ZOLLMANN, BANKS & BANKING (1936 ed.) § 358.

With respect to the alleged violation of § 371d, it is highly doubtful whether the net annual rental payable under the lease may properly be deemed an "investment" within the meaning of that section. Cf. Burkhard Inv. Co. v. United States, 100 F.2d 642, 645 (9th Cir. 1938). Clearly, however, neither the annual rental payments nor the "operating costs" can be aggregated in advance for the 21-year term and then utilized as a basis for asserting a violation of the provisions of § 82 or § 371d. Such cumulated rental payments or "operating costs" in no sense fall within the scope of the restrictions embodied in these sections.[2]

Section 29, in essence, empowers a national bank to purchase, hold, and convey such real estate as is "necessary

---

**2.** It may be noted, by way of aside, that even on plaintiff's own theory of cumulation, summary judgment could not be granted in favor of the bank on the basis of the aggregated "operating costs" since the alleged expenses and costs would plainly present triable issues of fact.

for its accommodation in the transaction of its business." Plaintiff argues that since the bank uses only a few stories of the building, it does not *need* all of the premises covered by the lease; and the lease is therefore violative of the statute and *ultra vires*.

It is clear beyond cavil that the statute permits a national bank to lease or construct a building, in good faith, for banking purposes, even though it intends to occupy only a part thereof and to rent out a large part of the building to others. Brown v. Schleier, supra; Wingert v. First National Bank of Hagerstown, Md., 175 F. 739 (4th Cir., 1909), app. dismissed 223 U.S. 670, 32 S.Ct. 391, 56 L.Ed. 605 (1912).

Hence, in Brown v. Schleier, supra, the Court of Appeals observed (at p. 984 of 118 F.):

> " * * * and we perceive no reason why it may not likewise lease property for a term of years and agree with the lessor to construct such a building as it desires, *provided, always, that it acts in good faith,* solely with a view of obtaining an eligible location, and not with a view of investing its funds in real property or embarking them in speculations in real estate. Nor do we perceive any reason why a national bank, when it purchases or leases property for the erection of a banking house, should be compelled to use it exclusively for banking purposes. If the land which it purchases or leases for the accommodation of its business is very valuable, it should be accorded the same rights that belong to other landowners of improving it in a way that will yield the largest income, lessen its own rent, and render that part of *its* funds which are invested in realty most productive. *There is nothing, we think, in the national bank act, when rightly construed, which precludes national banks, so long as they act in good faith, from pursuing the policy above outlined.* * * * " [Emphasis added].

■ The relevance of good faith on the part of the bank in entering into the sale and leaseback transaction can scarcely be denied. Ibid.; Wingert v. First Nat'l Bank, supra, 175 F. at p. 741. That issue is implicit in the complaint (see ¶¶9, 10, 11) and constitutes a genuine issue of material fact which should be determined after full trial.

■ Defendants assert that only the United States has standing to challenge the authority of a national bank. As Judge Dimock held in an earlier motion to dismiss the complaint, however, plaintiff has standing to bring this suit to disaffirm the unexpired portion of the lease. Perth Amboy National Bank v. Brodsky, et al., 185 F.Supp. 217, 218 (S.D.N.Y.1960); McCormick v. Market Bank, 165 U.S. 538, 17 S.Ct. 433, 41 L.Ed. 817 (1897).

■ So far as the prior New Jersey litigation is concerned, it seems apparent that the district court's grounds for decision carry no *res judicata* effect with respect to the issues involved in this case for the reason that the Circuit Court of Appeals affirmed solely on the technical grounds of "failure to join indispensable parties" and refused to consider the alternative grounds. Brodsky v. Perth Amboy Nat'l Bank, 156 F.Supp. 316 (D. C.N.J.1957), aff'd 259 F.2d 705 (3rd Cir. 1958); Restatement of Judgments, § 69(2).

■ Nor can plaintiff properly be deemed estopped to challenge the validity of the leaseback arrangement. Texas & P. R. Co. v. Pottorff, 291 U.S. 245, 260, 54 S.Ct. 416, 78 L.Ed. 777 (1934); Awotin v. Atlas Exchange Nat'l Bank, 295 U.S. 209, 210, 213, 55 S.Ct. 674, 79 L.Ed. 1393 (1935).

For the reasons stated, defendants' cross-motion for summary judgment is granted with respect to the alleged violations of 12 U.S.C.A. §§ 82 and 371d. The allegations regarding violation of 12 U.S. C.A. § 29 present genuine issues of material fact requiring trial and with

respect to those issues defendant's motion for summary judgment is denied.

Plaintiff's motion for summary judgment is in all respects denied.

So ordered.