**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**SAVANNAH BANK & TRUST COMPANY OF SAVANNAH, a Corporation, Defendant.**

Civ. A. No. 1351.

United States District Court
S. D. Georgia,
Savannah Division.

Dec. 2, 1964.

Beverley R. Worrell, Regional Atty., U. S. Dept. of Labor, for plaintiff.

James P. Houlihan, Jr., Savannah, Ga., for defendant.

SCARLETT, District Judge.

This is an action brought by Plaintiff seeking to enjoin Defendant from allegedly violating the provisions of § 15(a)(2) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 et seq.).

The Defendant, Savannah Bank & Trust Company of Savannah, is a banking corporation organized under the laws of Georgia with its offices located in Savannah, Georgia. The Bank's principal office is located in a fifteen story bank and office building at the Northeast corner of Bull and Bryan Streets, in Savannah. The Bank, itself, occupies approximately 22% of the space in the building with the remaining 78% of the building being occupied by a variety of tenants who rent office space from the Bank.

Savannah Bank is a commercial bank engaged in all the usual activities of a commercial bank. It is a member of the Federal Reserve System and its deposits are insured by the Federal Deposit Insurance Corporation.

This action involves the wages of twelve cleaning and maintenance employees, hereinafter called "office building employees", whose duties are limited to those portions of the building leased to tenants. The question before this Court is whether these employees are covered by the Minimum Wage provisions of the Fair Labor Standards Act as Amended. They are not paid the minimum wage provided by the Act but are paid somewhat better than the going rate for this type of service in the Savannah area.

The 1962 Annual Report of the Bank is a part of the record submitted to the Court for its consideration. This Report shows that the gross operating earnings of the Bank for the year 1962 were $2,-763,543.90. This is broken down into interest earned on loans, $1,671,801.02, interest earned on securities $521,725.16, income from services $456,523.45 and bank building rentals of $113,494.27. These figures are fairly representative of the Bank's earnings in other years,

including 1963. Building rentals, in particular, vary only slightly from year to year.

By stipulation, the parties have submitted this case for decision by the Court on the basis of the record to date which includes all pleadings, stipulations, various affidavits and the testimony of Defendant's President, Auditor and Building Manager, which was taken by Plaintiff. The only pleading that has not been considered by the Court is Defendant's Motion for Summary Judgment which is not urged. However, the affidavits in support of that Motion are a part of the record that has been considered by this Court. Finally, Plaintiff has stipulated that it does not contend in this action that the office building employees, whose duties are limited to the rented portions of the Building, were subject to the provisions of the Fair Labor Standards Act prior to the Amendments of 1961.

Thus, the sole question before the Court is whether the Amendments to the Fair Labor Standards Act, which became effective on September 3, 1961, extended the coverage of the Act to Defendant's office building employees.

In 1961, and effective on September 3, 1961, Congress enacted various Amendments to the Fair Labor Standards Act. The pertinent provisions of the Act are contained in Title 29 of the United States Code and are as follows:

*"Section 203(d)* "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee but shall not include the United States or any State or political subdivision of a State, or any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."

*"Section 203(r)* "Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activi-

ties whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor; * * *"

*"Section 203(s)* "Enterprise engaged in commerce or in the production of goods for commerce" means any of .. the following in the activities of which employees are so engaged, including employees handling, selling or otherwise working on goods that have been moved in or produced for commerce by any person:

(3) any establishment of any such enterprise, except establishments or enterprises referred to in other paragraphs of this subsection, which has employees engaged in commerce or in the production of goods for commerce if the annual gross volume of sales of such enterprise is not less than $1,000,000;"

Subparagraphs 1, 2, 4 and 5, of Section 203(s) admittedly do not apply here.

Plaintiff has argued extensively that the legislative history of the 1961 Act shows a clear and unmistakable intent on the part of Congress to extend the coverage of the Act to employees such as Defendant's office building employees. These arguments, based on the use of various isolated words in the Senate Committee Report are unconvincing and the Court finds there is nothing in the legislative history of the Act to show any intention on the part of Congress to extend the coverage of the Act in the manner contended for by Plaintiff. Therefore, if Defendant's Office Building employees are now covered by the Minimum Wage Law, we must find that such coverage is extended by the words of the Act itself. A careful study of the 1961 Amendments convinces us that the Amendments have not extended coverage to these employees.

It is apparent from reading the Act that in order for an enterprise to exist, there must first be three components present. The first is "common control". It is not disputed that this exists. Next, there must be "related activities" performed for a "common business purpose". We find that these two components do not exist.

■ In the first place it must be stated that where a person, firm or corporation enters into a number of activities, the simple objective of making a profit is not the test of whether the activities are performed for a common business purpose. It is not disputed that for a common business purpose to exist the activities must be related.

■■ Plaintiff argues, however, that Defendant being a Bank, can engage only in banking activities and that necessarily the renting of office space is a banking activity and therefore related to Defendant's actual commercial banking operation. This argument is not only fallacious but defeats itself. If Plaintiff's argument is correct, then these building employees have always been covered by the Act as being engaged in Banking activities. However, we know that this is not true. Prior to 1961, the law was settled that office building employees, such as those involved here, were not covered by the Act. See: 10 East 40th Street Building v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806. J. P. Thomason v. Alester G. Furman Co., 4 Cir., 222 F.2d 421. If they are covered now, it would have to be on the theory that the banking activity and the office rental activity are related activities performed for a common business purpose.

It remains, then, to determine whether there is any relationship other than the profit motive between the Defendant's commercial operation and its office rental activity.

It is well known, and the record in this case shows, that Banks located in downtown areas quite commonly own buildings containing space far in excess of their own needs. Downtown land being

expensive and taxes high, Banks find it convenient to spread these expenses and maintenance and construction costs by renting space to tenants. That this is proper is well established. Brown v. Schleier, 10 Cir., 118 F. 981.

The Brown case was appealed on other grounds and was affirmed by the United States Supreme Court in 194 U.S. 18, 24 S.Ct. 558, 48 L.Ed. 857. See also: Perth Amboy National Bank v. Brodsky, D. C., 207 F.Supp. 785.

In the Brown case, the District Court said 118 F. at page 984:

"Nor do we perceive any reason why a national bank, when it purchases or leases property for the erection of a banking house, should be compelled to use it exclusively for banking purposes. If the land which it purchases or leases for the accommodation of its business is very valuable, it should be accorded the same rights that belong to other land owners of improving it in a way that will yield the largest income, lessen its own rent, and render that part of its funds which are invested in realty most productive. * * *"

Similar language appears in the Perth Amboy case. These cases definitely stand for the proposition that in addition to engaging in banking activities, banks may also engage in other permitted activities. It seems clear, therefore, that when Defendant, Savannah Bank, constructed its fifteen story office building, it was doing only what any other prudent land owner would do and that is to spread its expense. This involved a profit motive only and we find that the rental of space in Defendant's office building is not an activity related to banking, and the two activities are not performed for a common business purpose.

Finally, it is clear that 29 U.S.C. § 203(s)(3) has no application to Defendant. The Callus case and other cases cited above make it clear that Defendant's office building employees are not engaged in commerce or in the production of goods for commerce. Secondly, we do not consider that the rental of space in an office building constitutes sales as defined in the 1961 Act and in any event gross annual rentals from the Building are approximately $115,000, far less than the $1,000,000 figure named in 203(s)(3).

We find that the 1961 Amendments to the Fair Labor Standards Act of 1938 did not extend the coverage of the Act to Defendant's Office Building employees and therefore Plaintiff's prayer for injunction is denied and the petition is hereby dismissed.