**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**FIRST NATIONAL BANK AND TRUST COMPANY, a corporation, and First National Management Corporation, a corporation, Defendants.**

**Mabel V. KIRBY, Plaintiff,**

v.

**FIRST NATIONAL BANK AND TRUST COMPANY, a corporation, and First National Management Corporation, a corporation, Defendants.**

Civ. Nos. 9837, 63–310.

United States District Court
W. D. Oklahoma.

March 25, 1965.

**614**

Charles Donahue, Sol., Earl Street, Regional Atty., and Harry Campbell, Jr., Deputy Regional Atty., U. S. Dept. of Labor, Dallas, Tex., for plaintiff W. Willard Wirtz, Secretary of Labor.

Keith R. Treadway, Bay & Treadway, Okahoma City, Okl., for plaintiff Mabel V. Kirby.

R. C. Jopling, Cochran, Dudley, Fowler, Rucks, Baker & Jopling, Oklahoma City, Okl., for defendants.

DAUGHERTY, District Judge.

These consolidated cases consist of an action brought by the Secretary of Labor, in his official capacity, to enjoin future violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S. C.A. § 201 et seq., by the defendants, First National Bank and Trust Company of Oklahoma City and the First National Management Corporation, and an action brought by Mabel V. Kirby, a former employee of the defendant, Management Corporation, to recover moneys due her as minimum and overtime wages plus a reasonable attorneys' fees for said defendants' failure to comply with the provisions of said Act. The specific violations deal with the failure on the part of the defendant, Management Corporation, to pay certain "maintenance" and/ or "service" employees the proper minimum and overtime wage as required by the said Act as amended in 1961.

The parties have filed a stipulation and a supplement thereto which along with two depositions and the answered interrogatories contain all the facts of this controversy. All parties at consolidated pre-trial hearing submitted the matter to the Court for decision on the foregoing.

The defendant Bank is a corporation organized under the National Banking Laws and is engaged in the commercial banking business. The defendant Management Corporation is an Oklahoma corporation engaged in the sole business of operating the First National Bank Building, the First National Office Building and the First National Parking Garage Building. The Bank is the sole owner and stockholder of the Management Corporation. There is a written contract between the Bank and the Management Corporation for the operation of the said buildings, all of which are solely owned by the Bank. Further, there is an oral lease from the Management Corporation to the Bank for the space occupied by

the Bank in the said buildings. The space occupied by the Bank is 153,549 square feet of 20.7 per cent of the 741,238 total square feet of all three buildings. All insurance is carried jointly by the defendants and a third entity not material to this case. Actual title to the buildings involved is held by the Bank and the buildings are carried on the Bank's books as an asset. Income from building rentals is shown on the books of the Bank as general earnings. Gross rentals for space in the buildings exceed $200,000 per month and the tenants include oil companies, insurance companies, law firms and many other diverse businesses, some of which are engaged in interstate commerce or in the production of goods therefor, as defined by the Act. The building manager is also a vice president of the Bank and receives a salary from both defendants. The Management Corporation's sole income is $30,000 per year which is paid to it as a fee by the Bank for the operation of the said buildings. The Bank employs an average of 440 employees, all of whom are engaged in interstate commerce or in the production of goods for interstate commerce as defined by the Act. The Management Corporation employs an average of 205 persons in the maintenance and operation of the involved buildings. There is no dispute that certain of said employees are not receiving the minimum and overtime wage required by the Act if coverage is present.

The primary assertion of the Secretary is that since the 1961 amendments to the Act became effective, the two defendants constitute an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Sections 203(r) and 203(s) of the Act so as to entitle the said "maintenance" and/or "service" people of the involved buildings to the monetary benefits of the Act.

The defendants counter with basically three contentions. First, they assert that the Management Corporation does not have any employees engaged in commerce or engaged in the production of goods for commerce, relying upon 10 East 40th St. Bldg., Inc. v. Callus, et al., 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806. Second, the defendants assert that they are not an "enterprise" within the meaning of the Act. And third, the defendants assert that rental income and bank income are not "sales" as that term is used in Sections 203(k) and 203(s)(3) of the Act, and therefore, any enterprise is not in commerce.

The pertinent provisions of the Act are set out as follows:

"Sec. 203(k) 'Sale' or 'sell" includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition."

"Sec. 203(r) 'Enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor. * * *

"Sec. 203(s) 'Enterprise engaged in commerce or in the production of goods for commerce' means any of the following in the activities of which employees are so engaged, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person."

"Sec. 203(s) (3) any establishment of any such enterprise, except establishments and enterprises referred to in other paragraphs of this subsection, which has employees engaged in commerce or in the production of goods for commerce if the annual gross volume of sales of such enterprise is not less than $1,000,000;"

* * *

"Sec. 206(b) Every employer shall pay to each of his employees who in any workweek (i) is employed in an enterprise engaged in commerce or in the production of goods for commerce, as defined in section 3(s) (1), (2), or (4) [of this title] or by an establishment described in section 3(s) (3) or (5), and who, except for the enactment of the Fair Labor Standards Amendments of 1961, would not be within the purview of this section," * * *.

The case of 10 East 40th St. Bldg., Inc. v. Callus, et al., supra, decided in 1945, held that the maintenance employees of a metropolitan office building occupied by various tenants, some of which were in commerce and some of which were not in commerce, were not covered by the Act, inasmuch as there was not present "a close and immediate tie" between the maintenance employees and the commerce activities emanating from the office building. The Callus case must be considered with the case of A. B. Kirschbaum Company v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, which held that the maintenance employees of a building devoted entirely to manufacture for commerce were covered because there existed the necessary "close and immediate tie" with commerce and the case of Borden Company v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1864, in which the maintenance employees of a separate office building owned and 58% occupied by Borden and called the heart of an industrial empire consisting of several manufacturing plants of Borden all of which were engaged in commerce were covered by the act on the basis that the necessary "close and immediate tie" was present notwithstanding the physical separation of the manufacturing plants from the headquarters office building.

■ Thus, prior to the 1961 amendments to the Act, the maintenance employees of the First National Management Corporation were not covered by the Act under the Callus case. The plaintiff Wirtz, however, contends that the 1961 amendments bringing into the Act the "enterprise" proposition, has caused these maintenance employees to now come under the Act. To support this position, it will be necessary, first, that the Bank and the Management Corporation constitute an "enterprise" as set out in § 203(r) above, and, second, the enterprise then must be found to be engaged in commerce or in the production of goods for commerce under § 203(s) above. It will also be necessary that the enterprise engaged in commerce have an annual gross volume of sales of not less than One Million Dollars as required under § 203(s) (3) above, and the definition of a sale under § 203(k) above.

To be an enterprise under § 203(r) it appears that there must exist "related activities" performed by persons for a "common business purpose" and either under unified operation or "common control." Taking the latter requirement first, it is noted that unified operation or common control is necessary. In the Court's opinion under the facts, it appears that common control is present between the Bank and the Management corporations. The Bank owns the involved buildings and is the sole stockholder of the Management Corporation. The officers and directors of the Management Corporation are also officers and directors of the Bank. The manager of the Management Corporation is also a vice president of the Bank from whom he receives the bulk of his salary. While "unified operation" may be absent, it seems quite clear from the facts that "common control" rests with one policy making body, namely, the directors and officers which serve both the Bank and Management Corporation. So the Court concludes that this requirement of an enterprise is present in this case.

The Court, however, is unable to find that the requirement of "related activities" is present in this case between the Bank and the Management Corporation. The activity of the Bank is that of con-

ducting a general banking business. The activity of the Management Corporation is to rent and maintain a metropolitan office building including the facilities therein of the Bank. These activities are distinct, inasmuch as the operation of running a bank and the operation of managing a building appear to be separate and distinct endeavors. The fact that a bank may lawfully own its buildings and rent out part does not change this distinction and separateness in this case where 80% of the buildings is not occupied by the Bank and the renting and maintenance of such a large and diversified complex employing 205 persons requires an effort and activity separate and distinct from banking.

The requirement of a "common business purpose" likewise appears to be absent under the facts of this case. It would seem that under the Act the general efforts of the two elements or establishments involved should constitute a common business. This is not the case here, for the business of the Bank is banking and the business of the Management Corporation is renting and maintaining an office building. There is no common business or common business purpose between them. Again, the purpose of one is banking and the purpose of the other is operating and maintaining an office building. It is not believed that the simple objective of making a profit for stockholders can constitute a common business purpose when to achieve this objective one effort engages in banking activities and the other engages in managing an office building and maintaining the same. The profit motive cannot be the test else all business ventures would be deemed related and common to each other.

The Court is mindful of the requirement that the Act should be liberally construed so as to carry out the intention of Congress. 12 A.L.R.2d 1131, 1135. However, if an enterprise means related activities and the activities presented are separate and distinct as here, and also means a common business pur-

pose and the business purpose of one entity is banking and the business purpose of the other entity is managing and maintaining an office building, such cannot be found from the facts of this case. It can be understood that several persons engaged in related activities such as selling a certain class of merchandise to the public and who have the common business purpose of presenting to the public an offering of such merchandise can be deemed an enterprise under the language of the Act, but the running of a bank on one hand and the running of an office building on the other do not seem to present related activities for a common business purpose as required to have an enterprise under a fair interpretation of the language employed in the Act. The enterprise proposition seems to fit a large department store or a chain store. It does not seem to fit a banking institution and a building management organization. Had Congress so intended, in the face of the Callus decision, it could and should have used different and appropriate language and tests.

But if the Court is wrong, and under the Act and the facts here, an "enterprise" is present, then it is still necessary for coverage that the "enterprise" be engaged in commerce, under § 203(s)(3). This is because an enterprise could be present but be engaged solely in intra-state activities and not be covered by the Act. Thus, for an "enterprise" to be in commerce it or any establishment of it must have employees engaged in commerce, and in addition the "enterprise" must have an annual gross volume of sales of not less than One Million Dollars. In the case at bar the Bank as an establishment of the enterprise does have employees engaged in commerce, even though the Management Corporation under the Callus case, does not have any such employees. However, regarding the second requirement, the income of the Bank is clearly not sales, and the renting of office space by the Management Corporation would not constitute sales with-

in the meaning of a sale as defined by § 203(k) above. Thus, the enterprise (if there is one) cannot be said to be engaged in commerce, for the reason that such enterprise does not have an annual gross volume of sales of not less than One Million Dollars. The plaintiffs argue that the renting of office space is the selling of space and constitutes a sale under the Act, citing Kirschbaum v. Walling, supra. Kirschbaum did not decide this to be so and did not involve the question of determining a sale or an annual gross volume of sales. This case merely said that selling space in a loft building is not the equivalent of selling services to consumers. The Kirschbaum case is not authority for the proposition urged by the plaintiff. It is noted that other sections of the Act require an "annual gross volume from *the business*" of an enterprise as distinguished from an "annual gross volume of *sales*" of an enterprise in our situation. A distinction was thus recognized between income from a *business* and income from *sales*. But the section involved in this case calls for an annual gross volume of *sales* as distinguished from income from a *business*. It is believed that the common ordinary concept of sales was intended in § 203(k) and § 203(s)(3) and must be applied by the Court in this case. It cannot be considered that the rental of space in an office building constitutes sales as defined in § 203(k) of the Act.

It is, therefore, determined that the 1961 amendments to the Fair Labor Standards Act of 1938 did not extend the coverage of the Act to the office building employees of the Management Corporation. Therefore, the prayer of the Secretary for injunctive relief must be denied and the prayer of Mabel V. Kirby to recover moneys due as minimum and overtime wages plus a reasonable attorney's fee must likewise be denied, and judgment should be entered dismissing both complaints.

Counsel for the defendants will prepare an appropriate judgment to this effect for the signature of the Court and entry herein.