Mrs. W. W. WEST et al., Plaintiffs,

v.

WAL–MART, INC., Wal-Mart of Springdale, Inc., and Wal-Mart of Harrison, Inc., Defendants.

Civ. A. No. 575.

United States District Court
W. D. Arkansas,
Fayetteville Division.

Feb. 16, 1967.

Davis & Mills and Curtis E. Rickard, Springdale, Ark., for plaintiffs.

W. H. Enfield, Little & Enfield, Bentonville, Ark., for defendant.

## OPINION

### Statement

JOHN E. MILLER, District Judge.

This action was commenced with the filing of the complaint by Mrs. W. W. West and others, in which they seek relief against Wal-Mart, Inc., under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. It is alleged that the plaintiffs are members of a class of employees of Wal-Mart, Inc., who have been paid less than the minimum wage prescribed by the Act (29 U.S.C.A. § 206), and who are entitled to recover the unpaid wages along with the penalty and attorney's fee in accordance with the provisions of 29 U.S.C.A. § 216.

The defendant Wal-Mart, Inc., filed its answer denying that it owed any unpaid wages, and alleged that its employees were not covered during the period in question because they were engaged in a retail service establishment meeting the requirements of 29 U.S.C.A. § 213, and were therefore exempt from the requirements of the Fair Labor Standards Act.

Upon the motion of the plaintiffs, Wal-Mart of Springdale, Inc., and Wal-Mart of Harrison, Inc., were joined as party defendants to the action.

Subsequent to the granting of the motion, the plaintiffs filed their amended complaint against all of the defendants, which amendment contains essentially the same allegations as the original complaint, but specifically alleges that the defendants are Arkansas corporations; that they operate stores in various cities in Arkansas; that they have substantially the same stockholders, directors and officers; that they are organized and operated for a common purpose; and perform related activities through unified operation and common control.

The defendants Wal-Mart of Springdale, Inc., and Wal-Mart of Harrison, Inc., filed their answers to the complaint as amended, denying that they owe the plaintiffs any unpaid wages, and also denying that the defendants have substantially the same stockholders, directors and officers, or that they are organized and operated for a common purpose, or are performing related activities through unified operation and common control.

The question of whether the parties are covered by the Act, as amended, was tried to the court on December 15, 1966. At the conclusion of the hearing, the question was submitted subject to the submission of briefs by the parties. Briefs in support of their respective positions have been submitted.

This court has jurisdiction over the subject matter and the parties pursuant to 29 U.S.C.A. § 216(b).

The question now before the court is whether or not the retail establishments by which the plaintiffs were employed were, during the time in question, subject to the minimum wage requirements of the F.L.S.A. (29 U.S.C.A. § 206), as amended. The plaintiffs contend that during the period in question they were paid wages below that which was required by the Act. The defendants do not deny that the wages paid were less than the amounts provided for by that section, but they contend that their activities were such that these plaintiffs were within the provisions of 29 U.S.C.A. § 213, and were therefore not covered.

### Facts

The defendant corporations all operate, and did operate during the period in issue, various discount houses or stores in the northwest Arkansas area, all of which are known and referred to

as "Wal-Mart." Wal-Mart, Inc., operates a store in Rogers, Arkansas; Wal-Mart of Springdale, Inc., operates a store in Springdale, Arkansas; and Wal-Mart of Harrison, Inc., operates a store in Harrison, Arkansas. The Rogers store was the first to come into existence, opening in early July, 1962. Prior to that time there were no other discount-type stores in northwest Arkansas. Mr. Sam M. Walton, a resident of Bentonville, Arkansas, had noted the success of this type of store in larger cities and felt that they could also be successful in smaller towns. He was at that time a 40-percent owner of a partnership known by the name of Walton's 5 & 10 Cent Stores. The remaining interest in the partnership was owned by his wife in trust for their children. This partnership became the majority stockholder in each of the three corporations. The following table shows the date of incorporation, the date of opening for business, the directors and stockholders, and the approximate percentage of ownership of each stockholder in each of the three corporations:

### Wal-Mart, Inc.

Incorporated May 14, 1962; opened for business July 1962.

Directors: Sam M. Walton, President Bentonville, Ark.
James L. Walton Versailles, Mo.
Helen R. Walton Bentonville, Ark.
Don Whitaker Rogers, Ark.

Stockholders: Walton's 5 & 10 Cent Stores, a partnership, Bentonville, Ark., 500 shares (86.9%)

James L. Walton and Audrey Walton, Versailles, Mo., 50 shares (8.6%)

Don Whitaker, Rogers, Ark., 25 shares (5.0%)

### Wal-Mart of Springdale, Inc.

Incorporated April 23, 1964; opened for business Oct. 1964.

Directors: Sam M. Walton, President Bentonville, Ark.
James L. Walton Versailles, Mo.
Helen R. Walton Bentonville, Ark.
Willard Walker Springdale, Ark.
Robert L. Bogle Bentonville, Ark.

Stockholders: Walton's 5 & 10 Cent Stores, a partnership, Bentonville, Ark., 500 shares (76%)

James L. Walton and Audrey Walton, Versailles, Mo., 80 shares (12%)

Willard Walker and Amy S. Walker, Springdale, Ark., 40 shares (6%)

Walton Profit-Sharing Trust, Bentonville, Ark., 30 shares (4.5%)

Robert L. Bogle and Marilyn Bogle, Bentonville, Ark., 8 shares (1.5%)

## Wal-Mart of Harrison, Inc.

Incorporated June 11, 1964; opened for business August 1964.

| Directors: | |
|---|---|
| Sam. M. Walton, President | Bentonville, Ark. |
| Helen R. Walton | Bentonville, Ark. |
| James L. Walton | Versailles, Mo. |
| C. C. Baum | Fayetteville, Ark. |
| Willard Walker | Springdale, Ark. |
| Robert L. Bogle | Bentonville, Ark. |
| Don Whitaker | Rogers, Ark. |

Stockholders: Walton's 5 & 10 Cent Stores, a partnership, Bentonville, Ark., 350 shares (58.3%)

James L. Walton and Audrey Walton, Versailles, Mo., 100 shares (16.7%)

Willard Walker and Amy S. Walker, Springdale, Ark., 50 shares (8.3%)

C. C. Baum and Nadine Baum, Fayetteville, Ark., 20 shares (3.3%)

Don Whitaker and Pauline Whitaker, Rogers, Ark., 40 shares (6.6%)

Robert L. Bogle and Marilyn Bogle, Bentonville, Ark., 10 shares (1.6%)

Walton Profit-Sharing Trust, Bentonville, Ark., 30 shares (5.0%)

———◆———

All three of the stores are known as discount houses for the reason that they operate on a low overhead, high volume basis. Thus the merchandise is sold at a price lower than it could be sold under normal merchandising circumstances. All three stores, like other discount houses, handle basically the same types of merchandise for the reason that these types of goods lend themselves more favorably to the discount concept.

The three stores were all successful almost from the opening day of each. The sales and purchases for the stores during the years in question are as follows:

### Gross Dollar Retail Sales

| | 1963 | 1964 | 1965 |
|---|---|---|---|
| Wal-Mart, Inc. (Rogers) | $339,599.79 | $496,794.40 | $771,769.89 |
| Wal-Mart of Springdale, Inc. | — | 411,073.04 | 1,112,019.84 |
| Wal-Mart of Harrison, Inc. | — | 327,191.74 | 726,135.65 |
| Total | $339,599.79 | $1,235,059.18 | $2,609,925.58 |

### Gross Dollar Purchases

| | 1963 | 1964 | 1965 |
|---|---|---|---|
| Wal-Mart, Inc. (Rogers) | $303,755.73 | $432,271.70 | $599,173.08 |
| Wal-Mart of Springdale, Inc. | — | 499,466.24 | 900,441.32 |
| Wal-Mart of Harrison, Inc. | — | 397,628.79 | 566,410.59 |
| Total | $303,755.73 | $1,329,366.73 | $2,066,024.99 |

From 90 to 95 percent of all purchases were made from out-of-state sellers, and nearly all of the employees of the stores handled the goods which came in from other states.

The stores were run on somewhat of an individual basis with each manager having extensive authority with respect to control over his own operation. Each store did its own advertising and generally purchased its own goods for resale, but there was some exchange of goods and some joint purchasing. All matters concerning personnel were generally handled by the various managers, and there was no exchange of employees. Each manager also became a stockholder in the corporation which operated his store. Mr. Walton, however, was president of each corporation and had the personal authority to direct the managers in their operations and even hire and fire the managers if he saw fit to do so. In fact, the managers are not the employees of the various stores, but are employed by another corporation, the Walton Management Company, which furnishes the stores with managers under contract.

This management company, which is operated by Mr. Walton, also acts as trustee for the Walton Profit-Sharing Trust, which owns a beneficial interest in the stores as set forth above. The purpose of this trust is to channel a share of the profits to certain employees of the stores.

The basic facts, then, are clear. Mr. Walton and his family own a majority interest in each of the three stores. He is president and a director of the three Wal-Mart corporations, and has personal authority to direct the activities of each of the store managers. All of the stores are engaged in essentially identical operations.

Title 29, U.S.C.A., § 213 provides:[1]

"(a) The provisions of sections 206 and 207 [minimum wage and max-imum hours] of this title shall not apply with respect to—

\* \* \* \* \* \*

"(2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, *if* such establishment—

"(i) is not an enterprise described in section 203(s) of this title, or

\* \* \* \* \* \*

"(iv) is such an enterprise and has an annual dollar volume of sales \* \* \* which is less than $250,000. "A 'retail service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; "

The term "enterprise," referred to in § 213(a) (2) (i), is generally defined in 29 U.S.C.A. § 203(s) as follows:

"(s) 'Enterprise engaged in commerce or in the production of goods for commerce' means any of the following in the activities of which employees are so engaged, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person:

"(1) any such enterprise which has one or more retail or service establishments if the annual gross volume of sales of such enterprise is not less than $1,000,000 \* \* \* at the retail level which are separately stated and if such enterprise purchases or receives goods for resale that move or have moved across State lines (not in deliveries from the reselling establishment) which amount in total annual volume to $250,000 or more."

1. The Act is copied as it read at all times material to the controversy. Recent amendments which have considerably ex-panded the scope of the Act are not material here as they were not in force during the time material to this suit.

Enterprise as above defined is more specifically defined in § 203(r), as follows:

"(r) 'Enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor: Provided, That, within the meaning of this subsection, a retail or service establishment which is under independent ownership shall not be deemed to be so operated or controlled as to be other than a separate and distinct enterprise by reason of any arrangement, which includes, but is not necessarily limited to, an agreement, (1) that it will sell, or sell only, certain goods specified by a particular manufacturer, distributor, or advertiser, or (2) that it will join with other such establishments in the same industry for the purpose of collective purchasing, or (3) that it will have the exclusive right to sell the goods or use the brand name of a manufacturer, distributor, or advertiser within a specified area, or by reason of the fact that it occupies premises leased to it by a person who also leases premises to other retail or service establishments."

As stated above, the defendants do not deny that the wages paid to plaintiffs were below that required by the Act, nor is there any dispute as to the amount of wages required by the Act if the Act is applicable. The sole question which must be determined here is whether the activities of the defendants are such that they were covered by the minimum wage provisions of the Act. In other words, this court must now determine whether, during the period in question, the activities of the defendants constituted a single "enterprise" as that term is used in the Act.

Because the term "enterprise" is used so frequently in the sections, both as a general term and as a word of art, all of the pertinent sections must be read together to determine which activities are exempt from the Act and which are not. Wirtz v. First National Bank (W.D.Okl.1965), 239 F.Supp. 613, in holding that the activities in the suit were not an "enterprise" explained the concept at page 616 as follows:

"To be an enterprise under § 203(r) it appears that there must exist 'related activities' performed by persons for a 'common business purpose' and either under unified operation or 'common control.' Taking the latter requirement first, it is noted that unified operation *or* common control is necessary. In the Court's opinion under the facts, it appears that common control is present between the Bank and the Management corporations. The Bank owns the involved buildings and is the sole stockholder of the Management Corporation. The officers and directors of the Management Corporation are also officers and directors of the Bank. The manager of the Management Corporation is also a vice president of the Bank from whom he receives the bulk of his salary. While 'unified operation' may be absent, it seems quite clear from the facts that 'common control' rests with one policy making body, namely, the directors and officers which serve both the Bank and Management Corporation. So the Court concludes that this requirement of an enterprise is present in this case."

The court went on to say that since the requirement of "related activities" was not present nor was there a "common business purpose," the Act would not cover the operation.

"The enterprise proposition seems to fit a large department store or a chain store. It does not seem to fit a banking institution and a building management organization." P. 617.

**164**

The activities of the three Wal-Mart stores were certainly "related." They were almost completely identical. "Common business purpose" was clearly present in each of the three stores.

Wirtz v. Edisto Farms Dairy (E.D. S.C.1965), 242 F.Supp. 1, presented a situation similar to that in the instant case. In that case, the Secretary, representing the employees, sued Edisto Farms Dairy, Edisto Dairies, and Edisto Fleets, all three being individual corporations. The court did not dwell on the "enterprise" question but said at page 6:

> "Defendant Robert P. Kapp is chief executive officer for all defendant corporations, and all the corporations exist for the sole purpose of distributing dairy products under the Edisto Farm Dairy brand name. They operate 'through unified operation of common control for a common business purpose.'"

In Edisto the court did not say that the requisite volume of business was not met by the individual corporations, but merely stated that the combined gross volume was in excess of $3,000,000, and held that the "enterprise" was not exempted by § 213.

■ It is the opinion of this court that the activities engaged in by the various Wal-Mart stores, or establishments, must be considered an "enterprise" for the purposes of the F.L.S.A. It is patently clear that Mr. Walton is the primary driving force behind each of the corporations and that each of the stores is but a division of the Wal-Mart operation which, under the law, is only one operation.

Therefore, an order is being entered today declaring that the three defendant corporations constituted one enterprise and were therefore not exempt from the minimum wage requirements of the Fair Labor Standards Act.

Since there appears to be no controversy as to the identity of the named plaintiffs in the original complaint and the first, second and third amendments who were employed, the time they worked within two years prior to the filing of the original complaint and amendments against Wal-Mart, Inc., (29 U.S.C.A. § 255), the court suggests that in the interest of justice, and the economy of time and expense, that the attorneys for the parties proceed with reasonable dispatch to determine the amounts due all plaintiffs, if any, and if not paid report to the court, in order that the court may enter judgment for the amount of wages, liquidated damages and attorneys' fees under 29 U.S.C.A. § 216(b). Otherwise, the court will give consideration to the appointment of a master under Rule 53, Fed.R.Civ.P.